HALL-LUHRS & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3954. Promulgated February 26, 1927.

> Value at March 1, 1913, of good will, trade-marks, and trade brands of the liquor department of a wholesale business not established by the evidence as distinguishable or separable from the value of the combined intangible assets of the petitioner at such date. Loss of intangibles during the taxable years not proven.

*Eustace Cullinan, Esq.,* for the petitioner.
*George G. Witter, Esq.,* for the respondent.

The Commissioner has determined deficiencies for the years 1918, 1919, and 1920, in the respective amounts of $3,345.05, $645.59, and $179.73. The only error alleged by the petitioner is that it was not permitted to take a deduction from gross income for any of the years involved on account of obsolescence of good will, trade-marks, and trade brands, appertaining to the portion of its business engaged in the sale of intoxicating liquors.

FINDINGS OF FACT.

The petitioner is a California corporation with its principal office at Sacramento. It is the successor of a partnership which conducted a similar business from some time in 1887 to January 12, 1907, when it was incorporated. From 1887 until June 30, 1919, the partnership and its successor, the petitioner, was a wholesale dealer in groceries and intoxicating liquors. It owned several copyrighted

trade brands and trade-marks under which it sold liquors, and, for many years, it had the exclusive agency for Northern California and Nevada of Sunnybrook Whiskey, a commodity which was manufactured in Louisville, Ky. At June 30, 1919, in obedience to wartime prohibition legislation, the petitioner ceased the sale of intoxicating liquors and distributed its stock of such merchandise then on hand as a dividend to its stockholders, and since that date has been engaged only in the sale of groceries and non-alcoholic beverages.

From 1907 to 1919, inclusive, sales of intoxicating liquors averaged 8 per cent of the petitioner's gross sales, and about the same percentage of its employees devoted their entire time to the liquor business. No separate accounts reflecting sales of liquors were kept with customers who purchased both groceries and liquors. The percentage of profit from the sales of liquors was greater, at all times, than from the sales of groceries. The only separate accounts kept for the liquor business were gross purchases, gross sales, and inventories.

For the years 1908 to 1912, inclusive, the petitioner's average capital and surplus was $61,003.85; its average annual net receipts from sales of liquor were $82,581.38. During the same period its annual average net sales of groceries and liquors were $1,095,300.65, and its annual average net income from all its business operations was $20,938.05.

For the taxable years the income and profits-tax returns of the petitioner show the following:

| Year | Capital and surplus. | Gross sales. | Gross income. | Taxable income. |
|------|---------------------|--------------|---------------|-----------------|
| 1918 | $404,127.60 | $1,360,217.40 | $179,507.08 | $54,141.56 |
| 1919 | 410,952.09 | 1,786,905.39 | 204,115.99 | 63,020.37 |
| 1920 | 428,323.46 | 1,975,347.94 | 182,611.19 | 28,628.28 |

In its original income and profits-tax return for the year 1918, filed in April, 1919, the petitioner took no deduction for obsolescence of intangibles on account of prohibition legislation. In September, 1919, it filed an amended return in which it claimed such an allowance in the amount of $71,985.02. Upon audit of such returns and of returns for 1919 and 1920, the Commissioner disallowed the petitioner's claim for obsolescence, made some minor adjustments which are not in dispute, and determined the deficiencies here in question.

OPINION.

LANSDON: The only issue here is whether the petitioner is entitled to deduct the amounts of $81,187.99 and $20,052.71, respectively,

from its gross income for the years 1918 and 1919 as allowances for obsolescence of intangible assets resulting from wartime prohibition legislation. The petitioner relies primarily on the following provisions of the Revenue Act of 1918:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

If the Board decides adversely on the question of obsolescence, the petitioner makes the further contention that the amounts in question should be allowed under subdivision (4) of the same section, which provides for deductions from gross income of "losses sustained during the taxable year and not compensated for by insurance or otherwise."

It appears, therefore, that this proceeding involves first the proof of certain facts. Did the petitioner own intangibles pertaining to its liquor business consisting of good will, trade-marks, and trade brands? Since obsolescence, if allowable, must be regarded as included in exhaustion, it follows, in the light of our decision in the *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169, that the value of such intangibles at March 1, 1913, must be established as the basis for computing any amounts that may be allowed on account of obsolescence. If the evidence adduced at the hearing establishes the essential facts, it then becomes our duty to determine whether such facts bring the petitioner within the provisions of the statute.

For a long time prior to the taxable years the petitioner was a wholesale dealer in groceries and liquors. The evidence that at March 1, 1913, it owned intangibles of some value is conclusive. Was the business of such a nature, and was it conducted in such manner that at that date, or during the taxable years, the intangible value pertaining to the trade in liquors could be determined and segregated from the total value of such property that was owned by the petitioner? The evidence discloses that all the accounts of the two alleged departments of the petitioner's business were kept together, except that there was a record, though not in the ledger or any other set of controlling accounts, of the purchases, sales, and inventories of liquors. The liquor sales were about 8 per cent of the volume of transactions, and it is in evidence that the profits from such sales were proportionately greater than from the sales of groceries, but, prior to March 1, 1913, there were no accounts that reflected such profits as separate items of income. Later an attempt was made to segregate the profits of the two branches of the business, but it is obvious from the evidence that the results obtained by accountants employed for that purpose were largely estimates, based on an analysis of books that were in fact the records of a single business.

The proof of loss resulting from prohibition legislation is not conclusive. The record shows that the liquor business was abandoned at June 30, 1919, but, for that year, measured by the results of previous years, there were normal profits. For the year 1920, without any trade in liquors, the petitioner enjoyed the largest volume of business in its history up to that time. It is true that there was loss in operations in 1921, but there is no evidence that such loss resulted from the abandonment of the liquor trade. It may well have been due to the shrinkage of inventories incident to postwar adjustments.

From all the evidence we conclude that the petitioner has failed to prove the value of that part of its good will that pertained to its trade in liquors at March 1, 1913, or, in fact, that it had any such good will at any time that could be ascertained as a separate asset. It is unnecessary, therefore, to discuss or decide the question of law involved.

> *Judgment will be entered on 20 days' notice, under Rule 50.*